Filed 2/9/15  In re E.C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re E.C., a Person Coming Under the Juvenile Court Law. | D066504 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3703) |
| v. | |
| E.C., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Dependency Legal Group of San Diego, Tilisha Martin, Carolyn Levenberg and Brittany Murphy for Minor.

INTRODUCTION

Mother appeals from a judgment denying her petition for modification under Welfare and Institutions Code section 388, subdivision (a)(1).[1]  She contends the court abused its discretion by summarily denying the petition and not providing her with an evidentiary hearing.  We disagree and affirm the judgment.

BACKGROUND

In August 2013 the San Diego County Health and Human Services Agency (Agency) filed a petition on behalf of then two-year-old minor.  The petition alleged mother left the child inadequately attended.  The petition also alleged mother had been arrested for being under the influence of narcotics and for child cruelty, rendering her unable to provide regular care.[2]

According to the detention report, sheriff's deputies searched the family home and found drugs and drug paraphernalia within minor's reach.  In addition, minor had scratches and bruises on his body, mother had track marks on her arms, and maternal aunt, who lived in the home, had recently been arrested for possession of heroin and

---

[1]     Further statutory references are also to the Welfare and Institutions Code unless otherwise stated.

[2]     Minor's father had previously died from a heroin overdose.

2

methamphetamine. Maternal aunt's boyfriend, who was present at the time the deputies searched the home, was also arrested on drug charges.

A family friend cared for minor whenever mother was high on drugs. The family friend indicated mother was using methamphetamine, heroin, marijuana, and alcohol.

Mother admitted she had been using heroin and methamphetamine together and her drug usage occurred almost daily. However, she stated minor had never observed her injecting herself. She had a prior child welfare history in Utah for child endangerment and fetal alcohol exposure.

In September 2013 the Agency submitted a jurisdiction/disposition report recommending minor be declared a dependent and placed in the care of the family friend. Mother requested minor be placed with family in Utah. She indicated she would be willing to give up her parental rights if minor was sent to his grandparents in Utah. The Agency requested and the court ordered an expedited decision under the Interstate Compact on the Placement of Children (ICPC) (Fam. Code, § 7900 et seq.) to place minor with paternal grandparents.

The court sustained the Agency's petition and declared minor a dependent, removed physical custody from mother, and ordered the Agency to provide her with reunification services. The court set a review hearing in six months.

In January 2014 the Utah Division of Child & Family Services approved minor's placement with paternal grandparents under the ICPC. In March 2014, the Agency submitted an addendum report requesting the court order minor placed with paternal grandparents. The court granted the request. Maternal grandparents also lived in Utah

and expressed interest in placement, but they had not yet completed the home study process. In addition, there were concerns of substance abuse by both maternal grandparents and domestic violence by maternal grandfather.

In April 2014 the Agency submitted a status review report requesting the court terminate mother's reunification services and schedule a hearing under section 366.26 to select and implement a permanent plan for minor (.26 hearing). By then, minor had been residing with paternal grandparents approximately two weeks. Mother had made progress in individual therapy and seemed aware of the protective issues. However, mother had not made substantive progress with her parenting instruction. She failed to show up for three appointments with an in-home parenting instructor and the service provider intended to close the mother's case.

Although mother regularly visited with minor, she initially showed up for visits apparently under the influence of drugs. Her visits then became supervised by the Family Visitation Center. According to the center's staff, mother was often late and failed to show up for one of the visits. Staff also had to remind her not to use her phone during visits, to use appropriate language, and to change minor's diaper.

Perhaps most concerning, mother had not made substantive progress with her substance abuse treatment. She asked to be discharged from a residential treatment program after staying the minimum amount of time necessary to complete it and moved back into a home where known drug users resided. Not long after, she missed a drug test. In addition, her attendance at her 12-step recovery program was sporadic, and she had not been checking in with her sponsor or working on step one of the recovery program.

4

Moreover, mother was pregnant with another child, whose father was a methamphetamine user and in custody for a probation violation. Because mother did not want to relapse, she planned to move back to Utah. She told the social worker she wanted the court to terminate her services and place minor with paternal grandparents with a permanent plan of either adoption or legal guardianship.

At the six-month review hearing, the court found the Agency had provided mother with reasonable services and the return of minor to mother's custody would be detrimental to minor. The court further found mother had not made substantive progress with the provisions of her case plan. The court terminated mother's reunification services, scheduled a .26 hearing, and ordered minor to continue to be placed in relative care.

In July 2014 in preparation for the .26 hearing, the Agency submitted a report indicating minor was doing well in the care of paternal grandparents, who were committed to adopting minor. Mother relocated to Utah and had regular, supervised visits with minor. While minor enjoyed the visits, minor showed no negative reaction when mother left. Nonetheless, paternal grandparents were open to allowing mother to have a relationship with minor and to visit minor frequently as long as she was drug free.

The social worker who prepared the assessment report opined mother did not share a parental relationship with minor. Rather, mother's relationship with minor was similar to an extended family member. Therefore, the social worker opined it would not be detrimental to minor to terminate mother's parental rights.

In August 2014 on the day originally scheduled for the .26 hearing, mother filed a petition for modification seeking to set aside the court's prior order terminating her reunification services. She asked the court to place the child with her and close the case, or alternatively, place the child with her with further reunification services. As changed circumstances, mother alleged she began a substance abuse treatment program in Utah in April 2014, and had been testing clean. She was also participating in employment workshops. Mother asserted the requested modification would be better for minor because she and minor "remain clearly bonded, if placed in the care of [mother] it would allow [minor] to have stability and keep the parental child relationship intact."

In an addendum report, the Agency requested the court deny mother's section 388 petition. The Agency noted that although mother entered a treatment program in Utah, she did not attend 12-step meetings, did not have a sponsor, and did not have a relapse prevention plan. The Agency further noted mother resided with maternal grandparents, who were not approved for placement because of concerns about substance abuse and domestic violence in their home. The Agency also noted mother's relationship with minor was not a parental one. The social worker who prepared the report opined minor was in need of a safe, stable, and permanent home, which mother was unable to provide.

The court denied the petition without an evidentiary hearing, finding mother had not made a prima facie showing modification of the court's order would be in minor's best interest. The court then set the matter for a contested .26 hearing.

DISCUSSION

"A juvenile court dependency order may be changed, modified, or set aside at any time. [Citation.] A parent may petition the court for such a modification on grounds of change of circumstance or new evidence. [Citation.] The parent, however, must also show that the proposed change would promote the best interests of the child. [Citations.] [¶] Whether the juvenile court should modify a previously made order rests within its discretion, and its determination may not be disturbed unless there has been a clear abuse of discretion. [Citation.] ' . . . " [']The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*In re J.C.* (2014) 226 Cal.App.4th 503, 525-526.)

"Under section 388, a party 'need only make a prima facie showing to trigger the right to proceed by way of a full hearing.' [Citation.] The prima facie showing is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. [Citation.] In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.] The petition must be liberally construed in favor of its sufficiency." (*In re J.P.* (2014) 229 Cal.App.4th 108, 127.)

When, as here, a petition is filed on the eve of the .26 hearing, " ' "the focus shifts to the needs of the child for permanency and stability" [citation] . . . . A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift

7

of focus in determining the ultimate question before it, that is, the best interests of the child.' " (*In re J.C.*, *supra*, 226 Cal.App.4th at p. 526.)  Thus, "after reunification services have terminated, a parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*Id*. at p. 527.)

In this case, mother asserted minor would be better off if the court granted her petition and modified its order because minor was bonded to her and children generally fare better with their parents.  Assuming mother could provide evidentiary support for these assertions, they are not sufficient to establish modification of the court's order would advance minor's need for permanency and stability.  As the court noted below, minor was under three years old when the dependency proceedings commenced and had a right to permanency at an early time.  Mother had been given six months of reunification services, which she largely squandered.  She then acquiesced to the termination of reunification services, knowing minor's adoption by paternal grandparents was a possible, if not likely, consequence.  She did not make any effort to reestablish reunification services until four months later.  By then, minor was settled in paternal grandparents' home, minor had bonded to them and they had committed to adopting minor, and the court was poised to select a permanent plan for minor.  Granting mother's petition under these circumstances would have delayed the selection of a permanent home for minor and, consequently, would not have served minor's best interest.  (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 224.)  Accordingly, mother has not established

the court's decision to deny her petition without an evidentiary hearing exceeded the bounds of reason.

DISPOSITION

The judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

McINTYRE, J.